# State, *ex rel.* Hamilton *v.* Scoville.

### Bill to Abate Liquor Nuisance.

(Decided July 6, 1916.   72 South. 546.)

1. **Intoxicating Liquors; Abatement; Parties.**—Under § 20, Acts 1915, § 14, the Attorney General may appear in a suit instituted by a citizen to abate a liquor nuisance and present such argument and make such motion as the interests of the state may, in his judgment, require, since the proceedings are in the name of the state, and its purposes are at least quasi public, involving the administration of a criminal statute, and the promotion of an established public policy.

2. **Same; Suit by Citizen.**—Under said statute a citizen instituting such a suit, if a bona fide relator, is clothed with full authority to conduct and control the litigation by himself, or his legal representative, as he may deem best.

3. **Same.**—Under § 37 of said act, such a suit may be maintained only for the bona fide purpose of abating a liquor nuisance, and a suit instituted by an employee of a liquor dealer to test the claims of the dealer that the selling of a certain drink is not a violation of the law, cannot be maintained, although brought after the refusal of the Attorney General to sue, and without concealment of purpose.

[State, ex rel. Hamilton v. Scoville.]

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Bill by State, ex rel. Charles H. Hamilton against L. W. Scoville, to abate a liquor nuisance. Decree for respondent, and complainant appeals. Dismissed on motion of Attorney General.

The bill alleges that the respondent maintains in a hotel operated by him in Birmingham a common nuisance or unlawful drinking place, in that he keeps there, in excess of the amount allowed by law, six dozen pints of a liquor or beverage known as "Fehr's Ambrosia," which contains the following ingredients, and no other: Total solid matter (extract) 4.66 per cent.; ash (mineral matter) 0.154 per cent.; phosphoric acid, 0.043 per cent.; protein (albuminoids) 0.38; reducing sugars (as maltose) 0.74; alcohol, none. The bill charges that this liquor has something of the appearance and taste of beer, and is prohibited under the laws of Alabama, in that it is used and can be used as a substitute and subterfuge for intoxicating liquors, and for the purpose of evading the prohibition laws. The grounds of demurrer to the bill, although stated in various forms, present but one question, viz. the insufficiency of the bill to show that the beverage in question is alcoholic, intoxicating, or within any class of liquors prohibited by the statute. The trial court sustained the demurrers that although the presence in the beverage of 0.74 of 1 per cent. of reducing sugars, designated as maltose, may, in fact bring the beverage within the description of a beverage which is the production of maltose or glucose or in which maltose or glucose is a substantial ingredient as denounced by the statute, yet in the absence of an averment to that effect, the court could not judicially know that such in the case. Before the case was submitted on appeal, the Attorney General presented to the Supreme Court a motion to dismiss the proceedings on the ground that it is collusive merely, and without any real issue and without any real adversary party. This motion is submitted for determination on a number of affidavits filed on behalf of the state, and of the alleged parties to the bill. These affidavits show the following facts, without substantial dispute: Respondent, Scoville, being engaged in selling the beverage in question, was arrested on the charge that he was thereby violating the prohibition law. Pending this prosecution, the grand jury having investigated the matter and refused to indict him, under the advice of his counsel he procured from the state chemist an analysis of the

[State, ex rel. Hamilton v. Scoville.]

beverage as shown by the bill of complaint, and was advised by counsel that it was not a prohibited liquor, but that an authoritative adjudication of the question ought to be secured. His counsel then endeavored to instigate a disinterested proceeding by each of the several state's attorneys, who, however, refused to participate therein. Whereupon respondent's attorney prepared a bill of complaint and submitted it to the Attorney General, with the request that he file and prosecute it, with any amendments he saw fit to make, in order to make a test case, and thereby determine the status of Fehr's Ambrosia under the prohibition statute.

The Attorney General, after some deliberation, declined to initiate the proceedings desired, and then on the advice of his counsel respondent procured the relator Hamilton, to authorize this proceeding in his name as relator, and also procured an attorney for him to prosecute it, in the city court of Birmingham. It was understood between respondent and Hamilton that the latter should be at no expense in the matter either as to costs or counsel fees. It was also understood between them and their attorneys that the latter were to prosecute the case to the best of their ability upon a full and fair presentation of all the material facts so as to secure a fair and honest judgment of the court on the merits of the controversy pending, and that they should be free and unhampered in the control of the litigation. Hamilton is an employee in respondent's hotel, and has no interest or purpose in the litigation except to aid respondent in securing a judicial determination of the legality vel non of his sale of Fehr's Ambrosia as a beverage. On the submission of the cause in the city court, the state was represented only by attorneys for relator, who were selected as above set out, no state's attorneys appearing, but the trial court was fully informed that the proceeding was a friendly suit for the purpose of making a test case.

J. E. EMBRY, and S. W. WILLIAMS, for appellant. EMMETT O'NEAL, BURGIN & BROWN, and R. B. EVINS, for appellee.

WILLIAM L. MARTIN, Attorney General amicus cure.

SOMERVILLE, J.— (1) We think there can be no serious question as to the right of the Attorney General, as chief legal representative of the state, to appear in this proceeding and present such arguments and make such motions as the interests of the state may, in his judgment, require. The proceeding is in

the name of the state, and its purpose is at least quasi public, since it involves the administration of criminal statutes, and the promotion of an established public policy.—*Parker, Clerk, v. State, ex rel. Powell,* 132 Ind. 419, 421, 31 N. E. 1114.

(2) But since the law itself has armed any citizen with the authority to initiate such a proceeding in the name of the state, we thing the necessary implication is that such citizen, if a bona fide relator, is also clothed with full authority to conduct and control the litigation by himself, or his legal representatives, as he may deem best.—Acts 1915, § 20, p. 14.

(3) However, the question presented by the motion in this case does not depend for its consideration by this court upon the power and authority of the Attorney General in the premises, but may, from its peculiar nature, be entertained and considered regardless of the source of its suggestion, and even without suggestion from any one.

Unquestionably, the respondent, Scoville, has an issue with the state of Alabama, a real, bona fide issue, the judicial determination of which in some way may be well within his rights. Unquestionably, also, both he and his attorneys have used every honorable means in their power to secure such an adjudication by a genuinely adversary proceeding to be filed, conducted, and controlled by the ablest and most responsible legal representatives of the state. There has been no concealment of their purpose, and no suppression of the facts. So far as the present case and its particular results are concerned, we might apprehend no public harm and no evil consequences from its prosecution to judgment in the manner and under the circumstances here exhibited.

But the principle and the policy with which we are here confronted reach far beyond the interests and results of any single case. The proceeding here resorted to has been provided, as a part of our prohibition machinery, only for the bona fide purpose of abating liquor nuisances and thereby promoting the general policy and particular purposes of the prohibition laws.—Acts 1915, § 37, p. 35. We have given very deliberate consideration to the circumstances of this case, and we are persuaded that a sound public policy, and a due regard for the dignity of our courts and the respect that must be maintained for their jurisdiction and proceedings, demand our condemnation of this proceeding and our inhibition of its further prosecution.

[State, ex rel. Hamilton v. Scoville.]

We have conceded the existence of a justiciable question between respondent and the state, the question being simply whether his sale of "Fehr's Ambrosia" is a violation of the prohibition laws. But we cannot escape the conclusion that in this proceeding there is no real adversary complainant, one of the prime essentials of bona fide litigation. Hamilton has no purpose in view except to aid his employer in the achievement of an ulterior and collateral design, conceived for his own benefit, and foreign to the purpose of the law invoked. He (the nominal relator) has been exonerated by respondent from any liability for the costs and expenses of the litigation; he does not desire to abate any nuisance; he did not employ and has never conferred with his alleged counsel; and, in short, his only connection with the case consists in his authorization of the use of his name as relator. And even in this, he is at most but an agent of and for respondent. Under such conditions as these the notion of the presence of an adverse party complainant must be regarded as merely fanciful, however honest and sincere the intentions of all concerned.

If, on the other hand, it could be successfully contended by respondent that the state, and not Hamilton, is the real complainant, and therefore there is a genuine adversary, we would, to be consistent, be compelled to hold that the further prosecution or dismissal of the cause lies within the power and discretion of the Attorney General, for such power could not be vested in a purely nominal relator. This, of course, is not our view of the case, and we state the alternative merely to show that in either view respondent cannot complain of our action.

Our conclusion is in accord with general judicial sentiment, as illustrated by numerous cases: *Haley v. Eureka County Bank,* 21 Nev. 127, 26 Pac. 64, 12 L. R. A. 815; *Berks County v. Jones,* 21 Pa. 416; *Meeker v. Straat,* 38 Mo. App. 243; *Lee v. Lee,* 55 Ala. 590, 602; *South Springhill, etc., Co. v. Amador, etc., Mining Co.,* 145 U. S. 300, 12 Sup. Ct. 921, 36 L. Ed. 712.

We do not overlook the declaration of this Court in *Benners v. State,* 124 Ala. 97, 99, 26 South. 942, 943, that proceedings may be "instituted and conducted in an amicable way, with a view to speeding the decision of a controversy involving real parties and interests." That rule of policy is of general recognition, but the nature of the remedy here resorted to, and the circumstances of

its invocation, forbid its application here. The motion will be granted, and the proceeding will be dismissed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.